[838 NE2d 629, 804 NYS2d 713]

Tomáz Mendes Regatos, Respondent, v North Fork Bank et al., Appellants, et al., Defendant.

Argued September 8, 2005; decided October 20, 2005

**POINTS OF COUNSEL**

*Wickham, Bressler, Gordon & Geasa, P.C.*, Melville (*Eric J. Bressler* of counsel), for appellants. I. The one-year statute of repose contained in UCC 4-A-505 may be varied by agreement. II. The Commercial Bank of New York account agreement established a reasonable time within which to raise objections to account statements. (*Parent Teacher Assn., Pub. School 72 v Manufacturers Hanover Trust Co.*, 138 Misc 2d 289; *New York Credit Men's Adj. Bur. v Manufacturers Hanover Trust Co.*, 41 AD2d 912.) III. UCC article 4-A does not require actual notice rather than constructive notice of account transactions. IV. Under UCC article 4-A, the parties to an account agreement may agree to constructive notice rather than actual notice of account transactions. V. The parties in this case agreed to

constructive notice of account transactions through a hold mail system.

*Lopez Romero & Montelione, P.C.,* New York City (*Richard J. Montelione* and *Luis Alfredo Romero* of counsel), for respondent. I. The one-year statute of repose established by UCC 4-A-505 may not be varied by agreement where a funds transfer is the result of a payment order that is not authorized or not effective as the order of the customer. (*Kontrick v Ryan,* 540 US 443; *Steel Co. v Citizens for Better Environment,* 523 US 83; *United States v Robinson,* 361 US 220.) II. Although minimum limits, such as "reasonable time," do not apply to UCC 4-A-505, such limits are allowed by other provisions of UCC article 4-A. (*Grabowski v Bank of Boston,* 997 F Supp 111.) III. The account agreement between Tomáz Mendes Regatos and the bank addresses situations covered by article 4 of the UCC, but does not express the intention of the parties with respect to their rights and obligations concerning funds transfers under UCC article 4-A. (*Sheerbonnet, Ltd. v American Express Bank, Ltd.,* 905 F Supp 127; *Qassemzadeh v IBM Poughkeepsie Empls. Fed. Credit Union,* 167 AD2d 378; *New York Credit Men's Adj. Bur. v Manufacturers Hanover Trust Co.,* 41 AD2d 912.) IV. Article 4-A of the UCC requires actual notice which reasonably identifies the payment order. (*Matter of Chase Manhattan Bank v State of New York,* 40 NY2d 590.) V. Wherever actual notice is required by any section of UCC article 4-A, such requirement may not be varied by agreement. VI. Alternatively, even if the actual notice requirement could be altered by agreement, as a matter of law, the constructive notice contemplated by the account agreement in the form of a "hold mail" agreement is no substitute for the separate notice required for funds transfers. (*Grabowski v Bank of Boston,* 997 F Supp 111.)

*Sullivan & Cromwell LLP,* New York City (*H. Rodgin Cohen, Bruce E. Clark, Michael M. Wiseman* and *Stacey R. Friedman* of counsel), and *Norman R. Nelson* for Clearing House Association L.L.C., amicus curiae. I. The express terms of the Uniform Commercial Code permit a commercial customer to agree to vary the one-year statutory period established by section 4-A-505. (*Five Towns Coll. v Citibank,* 108 AD2d 420; *Josephs v Bank of N.Y.,* 302 AD2d 318; *Parent Teacher Assn., Pub. School 72 v Manufacturers Hanover Trust Co.,* 138 Misc 2d 289; *Bluebird Partners v First Fid. Bank,* 97 NY2d 456; *Bender v Jamaica Hosp.,* 40 NY2d 560; *Qassemzadeh v IBM Poughkeepsie Empls. Fed. Credit Union,* 167 AD2d 378; *Centre-Point Merchant Bank Ltd. v Amer-*

*ican Express Bank Ltd.,* 913 F Supp 202; *Sheerbonnet, Ltd. v American Express Bank, Ltd.,* 905 F Supp 127; *New York Credit Men's Adj. Bur. v Manufacturers Hanover Trust Co.,* 41 AD2d 912.) II. The 15-day period provided in Tomáz Mendes Regatos's agreement, within which he agreed to discover and report an unauthorized transfer, is not prohibited by UCC article 4-A. III. UCC article 4-A does not require actual notice; constructive notice is sufficient.

*Wilmer Cutler Pickering Hale and Dorr LLP,* New York City (*Christopher J. Meade* and *Anne K. Small* of counsel), and *Wilmer Cutler Pickering Hale and Dorr LLP,* Washington, DC (*Bruce E. Coolidge* of counsel), for American Bankers Association and others, amici curiae. I. Freedom of contract is a key principle of the Uniform Commercial Code in general and article 4-A in particular. (*Banque Worms v BankAmerica Intl.,* 77 NY2d 362.) II. The 15-day limitation period chosen by the parties applies. (*Kontrick v Ryan,* 540 US 443; *Steel Co. v Citizens for Better Environment,* 523 US 83.) III. Tomáz Mendes Regatos "received notification" when bank statements were made available to him.

### OPINION OF THE COURT

ROSENBLATT, J.

The United States Court of Appeals for the Second Circuit, by certified questions, asks us whether a commercial bank customer can recover funds that the bank improperly transferred out of his account, even though he did not notify the bank of the unauthorized transfer until well after the time limit stated in his account agreement. This issue requires us to decide whether the one-year period of repose in our Uniform Commercial Code § 4-A-505 may be modified by agreement. We also resolve whether UCC 4-A-204 (1) requires the bank actually to send the customer notice of an unauthorized transfer in order to trigger the running of a "reasonable time" within the meaning of that section, or whether a private agreement to hold a customer's mail can allow constructive notice to start that period. These are questions of first impression in this Court, and apparently in every other court of last resort in states that have adopted the relevant statutes.

In accord with the United States District Court for the Southern District of New York, we hold for the customer on both questions. The one-year period of repose in UCC 4-A-505, governing the customer's time in which to notify the bank of

the unauthorized transfer, may not be modified by contract. Furthermore, both the one-year statute of repose and the "reasonable time" referred to in section 4-A-204 (1), which determines the customer's ability to recover interest on the misallocated money, begin to run when the customer receives actual notice of the improper transfer.

I.

Tomáz Mendes Regatos held a commercial account with Commercial Bank of New York, the predecessor to North Fork Bank. His agreement with the bank required him to notify the bank of any irregularity regarding his account within 15 days after the bank statement and items were first mailed or made available to him.[1] The agreement did not provide for notice to him of electronic funds transfers, except to the extent those transfers appeared on his monthly statements. The bank adopted a practice of holding Regatos's bank statements rather than mailing them to him, and expected him to request the statements when he wanted to see them.

On March 23, 2001, the bank received a funds transfer order from someone it believed to be Regatos, but failed to follow agreed security procedures[2] to confirm the order. Without authorization, the bank then transferred $450,000 out of his account. On April 6, 2001, the bank received another transfer order, again failed to follow its security procedures and without authorization transferred an additional $150,000 out of his ac-

---

1. The relevant part of the account agreement stated that "[t]he depositor will exercise reasonable care and promptness in examining such statement and items to discover any irregularity including, but not limited to, any unauthorized signature or alteration and will notify the Bank promptly in writing of any such discovery, and in no event more than fifteen (15) calendar days subsequent to the time that such statement and items were first mailed or available to the depositor. In those situations in which the depositor has authorized the Bank to hold his correspondence, this section shall apply as if the depositor received such statement on the date shown on the statement."

2. The security procedures here involved nothing more than checking Regatos's signature against the signature on the faxed transfer order and calling him to confirm (cf. UCC 4-A-201 ["Comparison of a signature on a payment order or communication with an authorized specimen signature of the customer is not by itself a security procedure"]). Apparently, the bank did not require any password, even for large sums. Here, the bank compared the signature on the fax to its signature on file, but did not realize that the fax signature had been forged. The jury found that the bank did not telephone Regatos to confirm that the order was legitimate.

count. Together, these transfers represented most of the value of the account.

Regatos did not learn of the unauthorized transfers until he checked his accumulated account statements on August 9, 2001. The transfers were reflected on statements issued on March 23, 2001 and April 25, 2001, but the bank held these statements until he asked for them, following its standard practice in relation to him. He informed the bank of the unauthorized transfers on the day he learned of them, August 9, 2001.

When the bank refused to reimburse Regatos for the lost funds, he sued in the United States District Court for the Southern District of New York. In a comprehensive, well-reasoned opinion, District Judge Shira Scheindlin denied the bank's motion for summary judgment and held that the one-year statute of repose may not be shortened by agreement. The court ruled that, in any event, the 15-day notice period set by the account agreement was unreasonable and invalid. The Federal District Court further held that the UCC 4-A-505 period to notify the bank began to run when Regatos received actual notice of the error on August 9, 2001 (*Regatos v North Fork Bank*, 257 F Supp 2d 632 [SD NY 2003]).

A federal jury found in favor of Regatos. Following UCC 4-A-204, the court awarded him both the principal ($600,000) and the interest from the date the bank improperly transferred the funds.

The bank appealed, and the United States Court of Appeals for the Second Circuit determined that the legal issues necessary to dispose of the case were novel, important questions of New York law.[3] The Second Circuit certified to this Court, and we accepted, the following questions:

> "[1] Can the one-year statute of repose established by New York U.C.C. [ ] 4-A-505 be varied by agreement? If so, are there any minimum limits on the variation thereof (such as 'reasonable time') that estop [the bank] from denying Regatos recovery in this case? . . .

> "[2] In the absence of agreement, does New York U.C.C. Article 4-A require actual notice, rather than merely constructive notice? If so, can this require-

---

3. The parties do not dispute that New York law governs their relationship.

ment be altered by agreement of the parties and was such achieved here?" (*Regatos v North Fork Bank*, 396 F3d 493, 498-499 [2005] [Wesley, J.].)

We answer the first part of the first question "no," rendering the second part academic. We answer the first part of the second question "yes" and the second part of the second question "no."

## II.

UCC 4-A-204 establishes a bank's basic obligation to make good on unauthorized and ineffective[4] transfers and, with one exception, forbids any variation of that obligation by agreement. UCC 4-A-204 reads as follows:

> "(1) If a receiving bank accepts a payment order issued in the name of its customer as sender which is (a) not authorized and not effective as the order of the customer under Section 4-A-202, . . . the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund. However, the customer is not entitled to interest from the bank on the amount to be refunded if the customer fails to exercise ordinary care to determine that the order was not authorized by the customer and to notify the bank of the relevant facts within a reasonable time not exceeding ninety days after the date the customer received notification from the bank that the order was accepted or that the customer's account was debited with respect to the order. The bank is not entitled to any recovery from the customer on account of a failure by the customer to give notification as stated in this section.

> "(2) Reasonable time under subsection (1) may be fixed by agreement as stated in subsection (1) of Section 1-204, but the obligation of a receiving bank to refund payment as stated in subsection (1) may not otherwise be varied by agreement."

Furthermore, UCC 4-A-505 provides that

---

4. Ineffective transfers are those in which the bank has not properly executed security procedures (UCC 4-A-202).

"[i]f a receiving bank has received payment from its customer with respect to a payment order issued in the name of the customer as sender and accepted by the bank, and the customer received notification reasonably identifying the order, the customer is precluded from asserting that the bank is not entitled to retain the payment unless the customer notifies the bank of the customer's objection to the payment within one year after the notification was received by the customer." (UCC 4-A-505.)

Regatos argues that the one-year statutory period is an integral part of the bank's "obligation . . . to refund payment" under UCC 4-A-204 (1) and so, pursuant to UCC 4-A-204 (2), "may not . . . be varied by agreement." The bank and its supporting amici point out that the notice provision is in section 4-A-505, not section 4-A-204 (1), and rely on UCC 4-A-501 (1), which declares that "[e]xcept as otherwise provided . . . the rights and obligations of a party to a funds transfer may be varied by agreement of the affected party."[5] The bank maintains that the customer's duty to notify the bank of the error before recovering misallocated funds is an "obligation" separate from that created by section 4-A-204 (1) and therefore modifiable.

We agree with Regatos's reading of the statutes. In context, the policy behind article 4-A encourages banks to adopt appropriate security procedures. Only when a commercially reasonable security procedure is in place (or has been offered to the customer) may the bank disclaim its liability for unauthorized transfers (UCC 4-A-202). Permitting banks to vary the notice period by agreement would reduce the effectiveness of the statute's one-year period of repose as an incentive for banks to create and follow security procedures.

While the issue is close, we cannot accept the bank's argument that the customer's responsibility to notify the bank of its error is modifiable. UCC 4-A-204 (1) states that "[t]he bank is not entitled to any recovery from the customer on account of a failure by the customer to give notification as stated in this sec-

---

5. In support of this position, the amici urge that article 4-A is not a consumer protection statute, especially considering that it applies solely to presumably sophisticated commercial parties. While this is true to some extent, the provision in section 4-A-204 refusing to allow parties to modify the bank's basic obligation to refund unauthorized transfer funds contradicts the amici's argument because the provision clearly protects consumers, even commercial consumers, from bearing the burden of this type of bank error.

tion."[6] Accordingly, a bank has an obligation to refund the principal regardless of notice, provided such notice is given within one year in accordance with UCC 4-A-505 (*see* 3 James J. White and Robert S. Summers, Uniform Commercial Code § 22-4 [4th ed]). Moreover, as the District Court pointed out, section 4-A-505 (the one-year notice period) appears in the "Miscellaneous Provisions" part of the article, not the parts touching upon substantive rights and obligations (*Regatos*, 257 F Supp 2d 632, 644 n 19 [2003]). The period of repose in section 4-A-505 is essentially a jurisdictional attribute of the "rights and obligations" contained in UCC 4-A-204 (1). To vary the period of repose would, in effect, impair the customer's section 4-A-204 (1) right to a refund, a modification that section 4-A-204 (2) forbids.

Article 4-A was intended, in significant part, to promote finality of banking operations and to give the bank relief from unknown liabilities of potentially indefinite duration (*see Banque Worms v BankAmerica Intl.*, 77 NY2d 362, 371 [1991]). This legislative purpose does not suggest that those interests alter (or should alter) the statute's fine-tuned balance between the customer and the bank as to who should bear the burden of unauthorized transfers.

■ Therefore, we hold that the one-year repose period in section 4-A-505 cannot be modified by agreement. By notifying the bank on August 9, 2001, the day he received actual notice, and four or five months after the statements were available, Regatos acted either way within the year-long period of repose. This clearly satisfied the statutory requirement and he is entitled to recover at least his $600,000 principal.

### III.

The Second Circuit next asks whether actual notice is required under article 4-A (or whether mere constructive notice will do) and, consequently, whether Regatos is also entitled to recover interest on the misdirected funds.

---

**6.** "A customer that acts promptly is entitled to interest from the time the customer's account was debited or the customer otherwise made payment. . . . But the bank is not entitled to any recovery from the customer based on negligence for failure to inform the bank. Loss of interest is in the nature of a penalty on the customer designed to provide an incentive for the customer to police its account. There is no intention to impose a duty on the customer that might result in shifting loss from the unauthorized order to the customer" (UCC 4-A-204, Comment 2, reprinted in McKinney's Cons Laws of NY, Book 62½, UCC 4-A-204, at 622).

The bank made Regatos's monthly account statements available for his review, but waited for him to request them rather than send them to him. According to its agreed security procedures, the bank was to reach him by telephone immediately after it received a funds transfer order, to confirm that he had actually authorized the transfer. Other than that call, which the jury found was never made, the only notice available to him would come from his own perusal of the account statements.

In his earlier dealings with the bank, Regatos tended to check his statements regularly. By 2001, however, he reviewed the bank's statements only intermittently. In that year, he asked to see his statements some time before the unauthorized transfer on March 23, 2001 and did not ask again until August 9, 2001, after the bank had generated statements on March 23, 2001 and April 25, 2001. These two statements revealed the unauthorized transfers, but the bank continued to hold the statements until Regatos asked for them. As discussed, he immediately notified the bank of its error when he discovered it on August 9, 2001.

█ The bank argues that Regatos obtained constructive notice of the transfers on March 23, 2001 and April 25, 2001, when the statements disclosing them were first generated. UCC 4-A-204 requires a customer seeking to recover interest on funds lost due to an unauthorized transfer "to notify the bank of the relevant facts within a reasonable time not exceeding ninety days after the date the customer received notification from the bank that the order was accepted." We agree with Regatos that this requirement may not be waived.

Under the bank's reading of the statute, an agreed 15-day notice period could run before a bank statement was even available for the customer's review. If the burden of checking whether the bank has wrongfully transferred funds out of the customer's account were to fall on the customer, as it would under a constructive notice interpretation, the customer's duty to check would presumably arise as soon as the data became available for review. In electronic funds transfers, the bank would be able to inform an inquiring customer of the transfer well before the formal monthly statement is compiled. Conceivably, the crucial information could be sitting in the bank's possession for weeks, awaiting discovery by the customer. If the customer did not inquire, and the agreement's 15-day period ran, the customer would lose the transferred funds even though

the error was entirely the bank's. This seems to us both the logical consequence of a constructive notice system and an unreasonable view of actual banking relationships. Because interpretation of the UCC is always conducted with an eye toward business realities and the predictable consequences of legal rules, we reject a statutory interpretation that conflicts with reasonable business practices.

Policy arguments support an actual notice requirement. An invariable statutory rule provides a bright line for banks and their customers, bringing reliability and certainty to these dealings. Constructive notice is far less exact, leaving too much room for varying interpretation and disorder. If the bank had complied with its security procedures, it would have called Regatos the same day it received each purported transfer order, thereby providing him with actual notice of the events.

Even where customers enter "hold mail" agreements with their banks, the actual notice rule still applies. Just as the one-year notice limitation is an inherent aspect of the customer's right to recover unauthorized payments, the actual notice requirement provides the bedrock for the exercise of that right. Permitting banks to enforce "agreements" to accept constructive notice would defeat article 4-A's guarantee of recovery for unauthorized payments.

In response to the second certified question, we answer that article 4-A requires actual notice, and that this requirement cannot be varied by a "hold mail" agreement, neither to begin the statute of repose, nor to begin "reasonable time" under the account agreement. Regatos notified the bank of his loss within an indisputably reasonable time after receiving actual notice, and is therefore entitled to recover the interest on his lost principal (UCC 4-A-204).

Accordingly, the first part of certified question 1 should be answered in the negative and the second part not answered as unnecessary, and the first part of certified question 2 should be answered in the affirmative and the second part in the negative.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, GRAFFEO, READ and R.S. SMITH concur.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of the Rules of the Court of Appeals (22 NYCRR 500.27), and after hearing argument by counsel for the parties and consideration of the

briefs and the record submitted, certified questions answered as follows: the first part of question 1 answered in the negative, and the second part of question 1 not answered as academic; and the first part of question 2 answered in the affirmative, and the second part of question 2 answered in the negative.