[14 NE3d 367, 991 NYS2d 14]

CLEMENTE BROS. CONTRACTING CORP. et al., Appellants, v APRILE HAFNER-MILAZZO, Also Known as APRILEANNA MILAZZO, Defendant, and CAPITAL ONE, N.A., Respondent.

Argued March 26, 2014; decided May 8, 2014

## POINTS OF COUNSEL

*Dollinger, Gonski & Grossman*, Carle Place (*Matthew Dollinger* of counsel), for appellants. I. Capital One, N.A. did not satisfy its burden of proof and it was error for the court to dismiss plaintiffs' complaint pursuant to either the UCC or any North Fork Bank rules or corporate resolutions. (*Zuckerman v City of New York*, 49 NY2d 557; *Negri v Stop & Shop*, 65 NY2d 625; *Louniakov v M.R.O.D. Realty Corp.*, 282 AD2d 657; *Scott v Long Is. Power Auth.*, 294 AD2d 348; *Dolitsky v Bay Isle Oil Co.*, 111 AD2d 366; *S.J. Capelin Assoc. v Globe Mfg. Corp.*, 34 NY2d 338; *Robinson Motor Xpress, Inc. v HSBC Bank, USA*, 37 AD3d 117; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851;

*Commissioners of State Ins. Fund v Fox Run Farms,* 195 AD2d 372; *Efdey Elec. Contrs. v Melita,* 167 AD2d 501.) II. The court should not have applied UCC 4-406 (4) to the causes of action involving the line of credit promissory note. (*Monreal v Fleet Bank,* 95 NY2d 204; *Technical Tape v Spray Tuck,* 131 AD2d 404; *Medinol Ltd. v Boston Scientific Corp.,* 346 F Supp 2d 575; *State St. Bank & Trust Co. v Inversiones Errazuriz Limitada,* 374 F3d 158.) III. There is a conflict among the Appellate Division departments as to the impact an alleged breach of the duty of care by a bank has on the application of UCC 4-406. (*Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.,* 74 NY2d 340.) IV. The Court of Appeals should address the 14-day time bar applied by the court below, on policy grounds. (*Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.,* 74 NY2d 340.) V. The documentary evidence does not support the application of the 14-day time bar. (*Schirmer v Athena-Liberty Lofts, LP,* 48 AD3d 223; *Matter of Ray,* 24 Misc 3d 285; *SOS Oil Corp. v Norstar Bank of Long Is.,* 76 NY2d 561.)

*Herrick, Feinstein LLP,* New York City (*Mara B. Levin* and *Christopher P. Greeley* of counsel), for respondent. I. The trial court and Appellate Division properly held that Capital One, N.A. is entitled to the protections of UCC 4-406 (4). (*Monreal v Fleet Bank,* 95 NY2d 204; *Woods v MONY Legacy Life Ins. Co.,* 84 NY2d 280; *Garage Mgt. Corp. v Chase Manhattan Bank,* 22 AD3d 432; *Josephs v Bank of N.Y.,* 302 AD2d 318; *Mansi v Gaines,* 216 AD2d 536; *Wells v Bank of N.Y. Co.,* 181 Misc 2d 574; *Gluck v JPMorgan Chase Bank,* 12 AD3d 305; *Radon Constr. Corp. v Colwell,* 248 AD2d 366; *Matter of Ray,* 24 Misc 3d 285; *Parent Teacher Assn., Pub. School 72 v Manufacturers Hanover Trust Co.,* 138 Misc 2d 289.) II. Borrowers have misconstrued cases from the Third and Fourth Departments in their failed attempt to invent a split among the departments where none exists. (*Monreal v Fleet Bank,* 95 NY2d 204; *Graves v Wachovia Bank, N.A.,* 607 F Supp 2d 1277.) III. This Court should affirm the appellate decision which upheld the trial court decision granting summary judgment to Capital One, N.A. on its counterclaims against the borrowers for breach of the loan documents. (*Key B.H. Assoc. v Banner Indus.,* 170 AD2d 246; *Marine Midland Bank v Scallen,* 161 AD2d 103; *Seaman-Andwall Corp. v Wright Mach. Corp.,* 31 AD2d 136, 29 NY2d 617; *Bank of Am., N.A. v Solow,* 59 AD3d 304; *117-14 Union Turnpike Assoc. v County Dollar Corp.,* 187 AD2d 357.)

*Shearman & Sterling LLP,* New York City (*Brian H. Polovoy* and *Melissa J. Godwin* of counsel), for Clearing House Association

L.L.C., amicus curiae. I. The Appellate Division properly held that a bank and its customer may agree to shorten the statutory time period within which the customer must notify its bank that the bank has paid on a forged check. (*Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.*, 74 NY2d 340; *Monreal v Fleet Bank*, 95 NY2d 204; *Woods v MONY Legacy Life Ins. Co.*, 84 NY2d 280; *Matter of World Trade Ctr. Bombing Litig.*, 17 NY3d 428; *Radon Constr. Corp. v Colwell*, 248 AD2d 366; *Qassemzadeh v IBM Poughkeepsie Empls. Fed. Credit Union*, 167 AD2d 378; *Catalano v Marine Midland Bank*, 303 AD2d 617; *Gluck v JPMorgan Chase Bank*, 12 AD3d 305; *Josephs v Bank of N.Y.*, 302 AD2d 318; *Garage Mgt. Corp. v Chase Manhattan Bank*, 22 AD3d 432.) II. There are sound policy reasons why this Court should, like other appellate courts that have addressed the issue, hold that a bank and its customers may agree to shorten the statutory time period in UCC 4-406 (4). (*Monreal v Fleet Bank*, 95 NY2d 204; *Woods v MONY Legacy Life Ins. Co.*, 84 NY2d 280.)

## OPINION OF THE COURT

Chief Judge LIPPMAN.

The primary issue presented is whether a bank and its customer may agree to shorten from one year to 14 days the statutory time period under UCC 4-406 (4) within which a customer must notify its bank of an improperly paid item in order to recover the payment thereon. In two opinions issued over 20 years ago, this Court declined to decide this issue because it was not presented directly, but questioned whether a 14-day period could be reasonable and observed that the question "raise[d] policy considerations" (*Putnam Rolling Ladder Co. v Manufacturers Hanover Trust Co.*, 74 NY2d 340, 349 n 2 [1989]; *SOS Oil Corp. v Norstar Bank of Long Is.*, 76 NY2d 561, 568 [1990]). We now hold that, at least in this case, the parties' agreement to shorten the period was permissible.

I

In April 2007, plaintiff Clemente Brothers Contracting Corp. opened three corporate operating accounts at North Fork Bank (which subsequently merged with defendant Capital One, N.A. [collectively Capital One]) and took out a loan and a line of credit, each backed by a promissory note. Clemente Brothers could draw money on the line of credit by sending a signed drawdown request to Capital One. As a condition precedent to

opening the accounts at Capital One, plaintiff Jeffrey Clemente, the company's principal, executed a personal guaranty with respect to the loan and line of credit, and Clemente Brothers passed a corporate resolution, which provided that Jeffrey Clemente was the only authorized signatory on the accounts and the only one authorized to sign drawdown requests on the line of credit.

The corporate resolution also provided,

> "That unless [Clemente Brothers] shall notify the Bank in writing *within fourteen calendar days* of the delivery or mailing of any statement of account and cancelled check, draft or other instrument for the payment of money (hereinafter referred to as 'Instrument') of any claimed errors in such statement, or that [Clemente Brothers'] signature upon any such returned Instrument was forged, or that any such Instrument was made or drawn without the authority of [Clemente Brothers] . . . or that it was raised or otherwise altered . . . said statement of account shall be considered correct for all purposes and said Bank shall not be liable for any payments made and charged to the account of [Clemente Brothers] or for any other errors in the statement of account as rendered to it."

Capital One mailed statements of account for all three of the operating accounts to the business address provided by Clemente Brothers. The monthly statements included copies of cancelled checks drawn on that account.

As for the line of credit, Capital One mailed a statement to Clemente Brothers each month showing the principal balance and the monthly interest payment, which was automatically debited from the primary operating account. Capital One has not offered any evidence that it included copies of the drawdown requests on the line of credit with the monthly statements. But the drawdowns appeared as credits on the operating account statements.

Defendant Aprile Hafner-Milazzo worked as a secretary and bookkeeper for Clemente Brothers until it was discovered that she had been forging Clemente's signature on certain Capital One bank documents, including drawdown requests on the line of credit and checks paid from one of Clemente Brothers' accounts. According to plaintiffs, Hafner-Milazzo embezzled

approximately $386,000 over the course of approximately two years, from January 2008 through December 2009.

In February 2010, Clemente Brothers notified Capital One of Hafner-Milazzo's thefts. Thereafter, Capital One determined that an event had occurred that adversely affected Clemente Brothers' ability to repay its debts and, pursuant to a clause in the two promissory notes, declared all amounts due and payable.

Plaintiffs subsequently commenced this action against Hafner-Milazzo and Capital One to recover damages resulting from Hafner-Milazzo's forgeries and to prevent Capital One from forcing repayment on the loans. In its answer, Capital One interposed several counterclaims to recover amounts due under the loans and Clemente's personal guaranty.

Capital One moved for summary judgment dismissing the complaint insofar as asserted against it and on its counterclaims. Supreme Court granted Capital One's motion in its entirety and awarded it the principal sum of $1,146,262.90 on its counterclaims (*Clemente Bros. Contr. Corp. v Hafner-Milazzo*, 2011 NY Slip Op 30384[U] [Sup Ct, NY County 2011]). According to the court, Capital One was "entitled to the protection afforded by UCC 4-406 (4)," which precludes liability for a bank to its customer when it pays a check on a forged signature but makes statements of the account and the allegedly forged items available to the customer, and the customer fails to report the alleged forgery to the bank within one year (*id.* at *4). Here, the court observed, Clemente Brothers and Capital One, by agreement, properly abbreviated the one-year period to 14 days, within which plaintiffs failed to report each of the alleged forgeries.

The Appellate Division affirmed (*Clemente Bros. Contr. Corp. v Hafner-Milazzo*, 100 AD3d 677 [2d Dept 2012]). This Court granted plaintiffs leave to appeal (21 NY3d 856 [2013]).

## II

New York's version of the Uniform Commercial Code (hereinafter UCC) imposes strict liability upon a bank that charges against its customer's account any "item" that is not "properly payable" (UCC 4-401 [1]; *Monreal v Fleet Bank*, 95 NY2d 204, 207 [2000]). An "item" is "any instrument for the payment of money even though it is not negotiable but does not include money" (UCC 4-104 [1] [g]). Black's Law Dictionary defines

"instrument" as a "written legal document that defines rights, duties, entitlements, or liabilities" (Black's Law Dictionary 869 [9th ed 2009]). Put another way, a bank may not charge a check, or other written document defining a right to or liability for payment, bearing a forged signature against its customer's account (*Monreal*, 95 NY2d at 207).

The UCC nevertheless limits banks' exposure by imposing obligations on customers that, if unfulfilled, may preclude a customer's suit against the bank. When a bank sends to its customer statements of account and copies of the items paid, the customer must review those documents promptly and notify the bank of any irregularities:

> "When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof" (UCC 4-406 [1]; *see also Monreal*, 95 NY2d at 207).

If the customer fails to fulfill its obligation, then the customer is precluded from asserting against the bank (1) "his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure" and (2) "an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days" (UCC 4-406 [2] [a], [b]). These bars to recovery do not apply "if the customer establishes lack of ordinary care on the part of the bank in paying the item(s)" (UCC 4-406 [3]).

An additional limitation, pertinent here, is found in UCC 4-406 (4), which creates something akin to a statute of repose that bars a customer's claim for recovery on a wrongfully paid item when the customer fails to report the irregularity within one year after the bank provides the statement and item, regardless of either party's failure to exercise reasonable care:

> "Without regard to care or lack of care of either the customer or the bank a customer who does not

within one year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature . . . is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration" (UCC 4-406 [4]).

Here, the parties shortened the one-year period to 14 days by agreement.

## A

Capital One argues that UCC 4-406 (4) defeats plaintiffs' claims with respect to both the operating accounts and the line of credit. But the application of UCC 4-406 (4) is contingent upon the bank providing the customer with account statements and copies of the items paid under UCC 4-406 (1). The parties do not seriously dispute that Capital One complied with UCC 4-406 (1) with respect to the operating accounts by providing monthly statements and copies of cancelled checks. But they do dispute whether the line of credit is subject to UCC article 4 at all, and, if it is, whether Capital One complied with UCC 4-406 (1).

■ Plaintiffs argue that the drawdown requests on the line of credit do not qualify as "items" within the meaning of UCC article 4. We disagree. The requests are written instruments formally exercising a contractual right to the payment of money from the line of credit. We do agree with plaintiffs, however, that, at least on this motion for summary judgment, Capital One cannot avail itself of UCC 4-406 (4). Capital One argues that the drawdown requests should be treated as items and that it is entitled to the protections of UCC 4-406 (4), but it conspicuously has not offered evidence showing that it complied with the threshold requirements of UCC 4-406 (1) quoted above.

The language of the New York statute tracks the language of the original model Uniform Commercial Code (Model UCC), and has not been amended by the legislature since adoption in 1962. Section 4-406 of the Model UCC was amended in 1991 to require that the bank must provide a statement of account and "shall either return or make available to the customer the items paid *or* provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid" (Model UCC [2002] § 4-406 [a] [maintaining 1991 language] [emphasis added]).

The Model UCC's official commentary explains that under the new language:

"[i]f the bank supplies its customer with an image of the paid item, it complies with this standard. But a safe harbor rule is provided. The bank complies with the standard of providing 'sufficient information' if 'the item is described by item number, amount, and date of payment.' This means that the customer's duties under [what was Model UCC 4-406 (4)] are triggered if the bank sends a statement of account complying with the safe harbor rule without returning the paid items'' (Model UCC 4-406, Comment 1).

Many states have adopted some form of the revised Model UCC 4-406. Ohio and Illinois, for example, require only that a bank provide an account statement with information sufficient to identify an item paid (see Ohio Rev Code Ann § 1304.35 [A]; 810 Ill Comp Stat § 5/4-406 [a]). But New York has not adopted the revised Model UCC.

Banks in New York, as elsewhere, must comply in good faith with UCC 4-406 (1) to seek the protections of UCC 4-406 (4) (see Elden v Merrill Lynch, Pierce, Fenner & Smith Inc., 2011 WL 1236141, *7, 2011 US Dist LEXIS 35886, *21-22 [SD NY, Mar. 30, 2011, No. 08-Civ-8738 (RJS)] [holding that bank did not send copies of the items and did not otherwise reasonably make them available, thus precluding relief under UCC 4-406 (4)]). Again, they may do this in one of three ways: supply the items to the customer with the statement of account, hold the items for the customer, or "otherwise in a reasonable manner make[ ] the statement and items available" (UCC 4-406 [1]). The official commentary explains that this third option is to be used only in "unusual situations" (UCC 4-406, Comment 2). But one treatise author has noted that "literal compliance with this triggering event seem[s] impossible," and argues that the bank practice of sending or posting simple account statements should be sufficient to satisfy the requirements of section 4-406 (1) (see 5 Hawkland et al., Uniform Commercial Code Series § 4-406:2 at Art. 4-988, 4-992; accord Barkley Clark & Barbara Clark, 1 Bank Deposits, Collections and Credit Cards ¶ 10.05 [1] [a] at 10-39—10-40 [2013]).

Here, the record does not show that the drawdown requests were provided to Clemente Brothers. Absent any record evidence

or discussion in the briefs about relevant banking practice or applicable regulations on this point, we do not hold that Capital One failed to comply with section 4-406 (1) as a matter of law. But neither has the bank demonstrated its compliance with the statute. Consequently, Capital One is not entitled to summary judgment on the line-of-credit claims under UCC 4-406 (4), and, on remittal, the judgment in its favor must be amended accordingly pending further proceedings on these claims.

■ Capital One argues in the alternative, and the lower courts also reasoned, that the wrongfully paid drawdown requests did not harm plaintiff. Capital One contends that paying the drawdown requests merely effectuated a transfer of funds from one of plaintiffs' accounts to another. But this is not an accurate description of the transactions; the funds did not come from plaintiffs' account, but from the bank itself.

The line of credit was, in effect, a pre-approved loan upon which plaintiffs could draw at will. Plaintiffs did not possess any borrowed funds or owe anything in repayment in the absence of a drawdown request. Upon such a request, Capital One would transfer funds to one of plaintiffs' accounts, interest immediately would begin to accrue and plaintiffs would be liable to repay the principal. Therefore, when Capital One wrongfully paid the drawdown requests at issue in this case, plaintiffs suffered financial harm.

## B

Turning to the application of UCC 4-406 (4), the UCC permits parties to alter the provisions of article 4 by agreement (*see* UCC 4-103 [1]). The Official Comments go so far as to say that there exists a "blanket power to vary all provisions of the Article" (*id.*, Comment 2). But that power is not boundless:

> "[N]o agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable" (UCC 4-103 [1]).

The application of these limitations raises two issues: first, whether parties can vary the one-year period by agreement; we hold that they can; and second, whether shortening the one-year period to 14 days is manifestly unreasonable; we hold that it is not, at least under these facts.

The argument that modification is not allowed is that by shortening the period, the bank is "disclaiming" its obligation to act with care or that it is limiting the measure of damages for a failure to act with care in violation of UCC 4-403 (1). This argument finds some slender support in our decision in *Regatos v North Fork Bank* (5 NY3d 395 [2005]).

*Regatos* involved the funds transfers provisions of UCC article 4-A. Banks are liable under article 4-A for improper funds transfers, similar to how they are liable under article 4 for improperly paid items. As for funds transfers, UCC 4-A-204 (2) provides that "the obligation of a receiving bank to refund payment . . . may not otherwise be varied by agreement."

UCC 4-A-505 contains a one-year notice period similar to that found in UCC 4-406 (4). This Court held that parties could not shorten the one-year period in UCC 4-A-505 by agreement (*Regatos*, 5 NY3d at 398-399). The Court reasoned that shortening the one-year period effectively would "var[y]" the bank's "obligation . . . to refund payment" in violation of the plain language of UCC 4-A-204 (2) (*id.* at 402-403).

Plaintiffs would have us apply *Regatos* to this case. They rely on two Appellate Division decisions that could be read as extending the logic of *Regatos* to UCC 4-406 (*see Aikens Constr. of Rome v Simons*, 284 AD2d 946, 947 [4th Dept 2001]; *Herzog, Engstrom & Koplovitz v Union Natl. Bank*, 226 AD2d 1004, 1004-1005 [3d Dept 1996]). But this result neither follows from the provisions of article 4 nor is it desirable as a policy matter.

Unlike UCC 4-A-204, UCC 4-103 (1) does not prohibit a bank from altering its obligation to refund payments made in good faith. And shortening the one-year period does not violate any of the prohibitions in UCC 4-103 (1). Capital One did not disclaim its responsibility to act with care by requiring its customer to notify it of an improperly paid item within 14 days of receiving the account statement. While shortening the period certainly affected Capital One's liability for improperly paid items, whether paid in good faith or not, it did not exclude all liability for negligence. Nor did the modification affect the measure of damages; it merely limited the time within which plaintiffs must provide notice of the improper charge.

Courts around the country have permitted parties to shorten the one year to various periods, from as short as 14 days to more than 60 days (*see e.g. Gluck v JPMorgan Chase Bank*, 12 AD3d 305, 306 [1st Dept 2004] [60 days]; *Peters v Riggs Natl.*

*Bank, N.A.*, 942 A2d 1163, 1168 [DC 2008] [60 days]; *Borowski v Firstar Bank Milwaukee, N.A.*, 217 Wis 2d 565, 576-580, 579 NW2d 247, 252-253 [1998] [14 days]). And the record and case law suggest that most banks do shorten the period.

To apply *Regatos*'s logic to this case would be to hold not only the 14-day period impermissible, but every other longer period used in the industry, be it 30 days or nine months. We perceive no good reason for creating such an inconsistency in the banking laws of the various states. We therefore hold that parties may modify by agreement the one-year period in UCC 4-406 (4), as long as the modification is not manifestly unreasonable.

■ The modification in this case is not manifestly unreasonable. Clemente Brothers had numerous employees, regularly moved hundreds of thousands of dollars in and out of its operating accounts, and had the resources to make an informed decision about opening accounts at Capital One. Critically, Clemente was fully aware of the terms of the agreements with Capital One because Clemente Brothers passed a corporate resolution acknowledging its obligation to notify Capital One of any irregularities within 14 days of each statement of account.

It is not manifestly unreasonable to expect a company with numerous employees and hundreds of thousands of dollars under its control to monitor its accounts once a month, within 14 days of each statement, particularly where it has acknowledged its responsibility to do so in a corporate resolution. That expectation is all the more reasonable in this age, when customers can monitor their account transactions minute by minute online from around the world.

We stress, however, that our holding is limited to the case of a corporate entity that either is financially sophisticated or has the resources to acquire professional guidance. It could well be unreasonable for banks to use contracts of adhesion to impose an exacting 14-day limit on unsophisticated customers, small family businesses, or individual consumers, including, for example, the elderly, people suffering from certain disabilities, or others for whom the 14-day rule could be too unforgiving. These customers may lack the time, technology, or other resources to check their account statements within such a limited period every month. They are more susceptible to unforeseen events disrupting their routines or normal business operations. And it may be that banks need less protection on these accounts because the total assets held may be less than those of larger

companies. But whether it would be *manifestly* unreasonable for these customers to be subject to a 14-day notice period, as opposed to a 30- or 60-day period, is a question for a later day.

The order of the Appellate Division should be modified, without costs, by remitting to Supreme Court for further proceedings in accordance with this opinion, and, as so modified, affirmed.

PIGOTT, J. (dissenting in part). Uniform Commercial Code § 4-406, titled "Customer's Duty to Discover and Report Unauthorized Signature or Alteration," sets forth a customer's and bank's respective duties concerning a customer's statement of account. When the bank sends the customer such a statement accompanied by items paid in good faith, the customer must "exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature . . . and . . . notify the bank promptly after discovery thereof" (UCC 4-406 [1]). If the customer does not comply with that provision he or she is precluded from asserting against the bank: A customer is not precluded from asserting against a bank an unauthorized signature under subsection (2), however, "if the customer establishes lack of ordinary care on the part of the bank in paying the item(s)" (UCC 4-406 [3]). UCC 4-406 (4) prescribes a one-year time limit on a customer to make a claim against a bank for its payment of an altered or forged paper irrespective of whether the bank exercised ordinary care.

> "(a) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and
>
> "(b) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration" (UCC 4-406 [2] [a], [b]).

Plaintiff claims that Capital One had notice of defendant Hafner-Milazzo's predisposition to commit illegal acts and failed to exercise ordinary care. By boilerplate resolution, however, the bank claims to have reduced the time under which the plaintiff could assert such a lack of ordinary care from one year to the

same 14-day time period as set forth in section 4-406 (2), effectively repealing section 4-406 (4) as it applies to its customers. The majority finds this reasonable, relying on UCC 4-103 (1), which provides, as relevant here, that UCC article 4's provisions "may be varied by agreement" with the caveat "that no agreement can disclaim a bank's responsibility *for its own lack of good faith or failure to exercise ordinary care* or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the *standards* by which such responsibility is to be measured if such standards are not manifestly unreasonable" (emphasis supplied).

In my view, because section 4-406 (4) clearly imposes a one-year limitation on claims involving a bank's "failure to exercise ordinary care," the time period cannot be changed by agreement. To be sure, there may be a variation in standards by which a bank's responsibility is to be measured (so long as such standards are not manifestly unreasonable), but the one-year limitation remains.

The majority claims that the shortening of the period resulted in a limitation of liability, and reduced only plaintiff's time to provide notice of the improper charge (majority op at 288). That is mere semantics, however, because the overall effect of the time reduction is to eliminate plaintiff's opportunity to assert, after the 14-day period had passed (but before the one-year time period had elapsed) that Capital One had failed to exercise ordinary care and, consequently, recover damages as a result of that negligence. The shortening of the time period works a de facto disclaimer of liability, which is prohibited under section 4-103 (1).

It is my view that just as the customer and bank in *Regatos v North Fork Bank* (5 NY3d 395 [2005]) were prohibited from modifying by contract the one-year statute of repose set forth in UCC 4-A-505*—which grants a customer one year to notify the bank of an unauthorized wire transfer—plaintiff and Capital

---

* UCC 4-A-505, titled, "Preclusion of Objection to Debit of Customer's Account," provides that

"[i]f a receiving bank has received payment from its customer with respect to a payment order issued in the name of the customer as sender and accepted by the bank, and the customer received notification reasonably identifying the order, the customer is precluded from asserting that the bank is not entitled to retain the payment unless the customer notifies the bank of the customer's objection to the payment within one year after the notification was received by the customer."

One were prohibited from contractually shortening section 4-406 (4)'s one-year time limitation. In *Regatos*, the bank received two unauthorized funds transfers totaling $600,000 and, in violation of the agreed security procedures, transferred the funds from the customer's account. When the customer notified the bank of the unauthorized transfers five months later, the bank refused to refund the money, relying on the account agreement's provision that the customer was to notify the bank of "any unauthorized signature or alteration" within 15 days (*see Regatos*, 5 NY3d at 399-400). Relying on UCC 4-A-204 (1)'s language that a "bank is not entitled to any recovery from the customer on account of a failure by the customer to give notification as stated in this section," we concluded that the bank had an obligation to refund the principal so long as notice was given within one year as required by section 4-A-505 (*id*. at 402-403). We explained that the policy behind UCC article 4-A was to encourage financial institutions "to adopt appropriate security procedures," and that allowing them "to vary the notice period by agreement would reduce the effectiveness of the statute's one-year period of repose as an incentive for banks to create and follow security procedures" (*id*. at 402).

Likewise, UCC article 4 imposes upon a bank the obligation to act with ordinary care, which required Capital One to follow commercially reasonable security procedures to ensure it was not making payments on unauthorized checks. A reduction in the one-year period to 14 days provides little, if any, incentive for a bank to act with ordinary care. And, of course, a bank's obligation to exercise ordinary care may not be varied by agreement (*see Aikens Constr. of Rome v Simons*, 284 AD2d 946, 947 [4th Dept 2001]; *Herzog, Engstrom & Koplovitz v Union Natl. Bank*, 226 AD2d 1004, 1005 [3d Dept 1996]). But that is precisely what the corporate resolution does in this case. Prior to today, our courts have never sanctioned such a practice.

The majority approach has at least two significant drawbacks. First, it impairs the incentive the authors of UCC article 4 created for banks to exercise ordinary care in the payment of items. Second, it seems to make the outcome of cases depend upon whether the customer is a Fortune 500 company, a medium-sized one (this plaintiff is no corporate giant), a small one, or an individual. It would be better to interpret the statute in a way that obviates the need for a court to analyze whether the customer was "financially sophisticated," possessed "the resources to acquire professional guidance," was a "small family

business" or an "elderly" individual (majority op at 289) because the rule would apply to every type of consumer. The rule proposed by the majority provides less certainty and will create more litigation because it doesn't apply to everyone in like fashion. The fact that the majority is concerned that financial institutions will "use contracts of adhesion to impose" what it acknowledges is "an *exacting 14-day limit* on unsophisticated consumers" (majority op at 289 [emphasis supplied]) only underscores why customers and banks should not be permitted to contractually reduce section 4-406 (4)'s one-year limitation period.

Accordingly, I respectfully dissent from that part of the majority holding that a customer and bank may contractually reduce section 4-406 (4)'s one-year limitations period.

Judges GRAFFEO, READ, RIVERA and ABDUS-SALAAM concur with Chief Judge LIPPMAN; Judge PIGOTT dissents in part in an opinion in which Judge SMITH concurs.

Order modified, without costs, by remitting to Supreme Court, Suffolk County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.