■ DRS Optronics, Inc., Appellant, v North Fork Bank, Respondent, et al., Defendants. [843 NYS2d 124]—

In an action, inter alia, to recover damages for breach of contract, the plaintiff appeals from so much of an order of the Supreme Court, Suffolk County (Emerson, J.), dated July 10, 2006, as denied its motion for summary judgment on the first cause of action alleging breach of contract against the defendant North Fork Bank and for leave to amend the complaint, in effect, to assert a cause of action against the defendant North Fork Bank for a refund under Uniform Commercial Code article 4-A and to increase the ad damnum clause to recover the total sum of $1,364,369 from that defendant.

Ordered that the order is modified, on the law, by deleting the provision thereof denying that branch of the plaintiff's motion which was for summary judgment on the first cause of action alleging breach of contract against the defendant North Fork Bank and substituting therefor a provision granting that branch of the motion as to liability only; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Suffolk County, for a hearing on the issue of damages in accordance herewith.

In July 2000 the plaintiff, DRS Optronics, Inc. (hereinafter DRS), and the defendant Electro Design Manufacturing, Inc. (hereinafter EDM), entered into a subcontract agreement by which DRS would provide parts in support of EDM's prime contract with the US Army Aviation & Missile Command (hereinafter AMCOM). On the same date, DRS and EDM entered into a custodial agreement (hereinafter the custodial agreement) with the defendant North Fork Bank (hereinafter North Fork), in order to facilitate payment of DRS by EDM under the

subcontract. Under the custodial agreement, North Fork was directed to establish a custodial account in the name of "North Fork Bank, as Custodian for EDM and DRS" (hereinafter the custodial account) to hold payment deposits made by AMCOM with respect to the EDM prime contract. No payments could be made out of the custodial account except pursuant to joint written instructions made by authorized signatories of DRS and EDM. The parties agreed that North Fork's responsibility was purely ministerial and that its liability would be limited to conduct constituting "willful misconduct or gross negligence."

Between November 2001 and September 19, 2002, EDM notified DRS of various AMCOM payments deposited into the custodial account. On each occasion, DRS sent a written authorization to North Fork and a copy of the authorization to EDM, directing North Fork to wire transfer a specific dollar amount to DRS in payment of specified invoices, and authorizing North Fork to transfer the remaining balance of the deposit pursuant to EDM's directions. North Fork would obtain verbal authorization from EDM and then transfer the amount requested to DRS.

In or about January 2003 DRS became concerned that EDM had become delinquent in payment since the last payment received on or about September 19, 2002, and requested that North Fork provide it with copies of bank statements for the custodial account. After reviewing the statements, DRS protested to North Fork that the sum of $562,808 had been deposited into the custodial account in October 2002 and then disbursed without its approval or knowledge. DRS requested that North Fork not allow any further disbursements without its approval.

Nevertheless, on February 18, 2003, after the sum of about $595,000 was deposited by AMCOM into the custodial account, North Fork permitted EDM to transfer the entire amount out of the custodial account without authorization by DRS. After DRS protested, North Fork's branch employees reviewed the custodial agreement for the first time and were able to recover all but the sum of $30,514, by debiting other accounts of EDM and a related company, the defendant Imrex, LLC of Great Neck, New York (hereinafter Imrex), and crediting the custodial account.

DRS thereafter commenced the instant action in which it sought to recover more than $2 million from EDM and Imrex for breach of the subcontract, and to recover the total sum of $909,062 from North Fork for breach of the custodial agreement. Of the $909,062 sought from North Fork, the sum of $565,500 was held in the custodial account at the time the ac-

tion was commenced, and the remaining sum of $343,562 represented funds allegedly paid by AMCOM to EDM and wrongfully released from the custodial account by North Fork. Pursuant to previous motion practice and stipulations among the parties, judgments have been entered against EDM in the total amount of $1,364,369 plus interest, the cause of action against Imrex has been discontinued, and the funds held on deposit in the custodial account in the sum of $565,500 have been turned over to DRS.

Following completion of discovery, DRS moved for summary judgment on the first cause of action alleging breach of the custodial agreement against North Fork and for leave to amend its complaint, in effect, to assert a cause of action against North Fork for a refund under Uniform Commercial Code article 4-A and to increase the ad damnum clause to recover the total sum of $1,364,369 from North Fork based on the new cause of action. DRS contended that pursuant to UCC article 4-A, North Fork must provide a refund of all of the funds transferred from the custodial account without proper authorization from the time of the account's establishment. The Supreme Court denied the plaintiff's motion and the plaintiff appeals.

The Supreme Court correctly determined that DRS could not assert a cause of action under UCC 4-A-204 for a refund of all unauthorized transfers made out of the custodial account from the time it was established, and therefore that it failed to demonstrate that its proposed amendment to the complaint had merit (*see Heckler Elec. Co. v Matrix Exhibits-N.Y.*, 278 AD2d 279 [2000]). Although the transfers directed by EDM were "fund transfers" governed by article 4-A of the UCC (*see* UCC 4-A-102, 4-A-103, 4-A-104 [1]; *cf. John & Mary Markle Found. v Manufacturers Hanover Trust Co.*, 209 AD2d 587, 588 [1994]), the remedy provided by UCC 4-A-204 only requires the bank to refund unauthorized transfers to its "customer," which is defined as a person "having an account with a bank" (UCC 4-A-105 [1] [c]; *see* UCC 4-A-104 [1]; *Regatos v North Fork Bank*, 5 NY3d 395, 402 [2005]). DRS did not itself have an account with North Fork, but derives its rights to funds deposited in the custodial account only from its status as a party to the tripartite custodial agreement, under which it has no right to receive funds from the account except upon the written consent of EDM. Accordingly, the Supreme Court providently exercised its discretion in denying the plaintiff's motion for leave to amend the complaint, in effect, to assert a cause of action for a refund under UCC article 4-A and to increase the ad damnum clause.

However, the Supreme Court erred in denying summary judg-

ment to the plaintiff as to liability on its first cause of action alleging breach of contract against North Fork. In support of its motion, DRS demonstrated that North Fork not only breached the custodial agreement, which is undisputed, but that its breach was grossly negligent, since North Fork failed to "exercise even slight care" or "slight diligence" in its role as custodian (*Food Pageant v Consolidated Edison Co.*, 54 NY2d 167, 172 [1981]; *see Gentile v Garden City Alarm Co.*, 147 AD2d 124, 131 [1989]). Knowing that the plaintiff was relying on the establishment of a secure custodial account to protect its right to receive payment under the subcontract with EDM, North Fork wholly failed to fulfill its contractual obligations to establish such an account as custodian on behalf of EDM and DRS, or to implement any procedure to ensure that the two-signature requirement would be enforced (*see Internationale Nederlanden [U.S.] Capital Corp. v Bankers Trust Co.*, 261 AD2d 117 [1999]; *Jewett v Manufacturers Hanover Trust Co.*, 48 Misc 2d 1094, 1095-1098 [1965]; *cf. John & Mary Markle Found. v Manufacturers Hanover Trust Co., supra* at 588). Instead, it established an account that was linked to other EDM and Imrex accounts through the bank's cash management system, which, in the words of North Fork's senior vice-president, is "completely inconsistent" with the two-signature requirement, since it enabled EDM to unilaterally direct transfers. In opposition to DRS's prima facie showing of grossly negligent conduct, North Fork failed to submit any evidence sufficient to raise a triable issue of fact as to whether it exercised even the slightest care in performing its obligations under the custodial agreement. Nor did North Fork submit any evidence sufficient to raise a triable issue of fact with respect to its defenses that DRS intentionally waived the two-signature requirement or otherwise agreed to any modification of that requirement (*see Gilbert Frank Corp. v Federal Ins. Co.*, 70 NY2d 966 [1988]; *Rose v Spa Realty Assoc.*, 42 NY2d 338, 343-344 [1977]; *Orange Steel Erectors v Newburgh Steel Prods.*, 225 AD2d 1010, 1012 [1996]). Thus, DRS established its entitlement to summary judgment as to liability on its first cause of action alleging breach of contract against North Fork.

The amount of damages sustained by DRS as a result of North Fork's breach of contract is the amount that would place it "in the same position as [it] would have been in if the contract had not been breached" (*Wai Ming Ng v Tow*, 260 AD2d 574, 575 [1999]). Since the purpose of the custodial account was to protect DRS's right to receive payment under the subcontract out of payments made by AMCOM, DRS's damages consist of the amount of AMCOM deposits earmarked for payment of DRS

that EDM was able to divert to other payees as a result of North Fork's breach. The record establishes that DRS is not entitled to recover any amounts from deposits made into the custodial account on or before September 19, 2002, since North Fork complied with the instructions given by DRS on that date to transfer a specified amount to DRS in payment of its outstanding invoices and DRS authorized North Fork to transfer the balance of the deposits pursuant to EDM's instructions. The record also establishes that DRS is entitled to recover at least the sum of $30,514, which North Fork was unable to recover after it allowed EDM to transfer the sum of about $595,000 from AMCOM's deposit on February 18, 2003. However, with respect to the other transfers unilaterally directed by EDM between September 19, 2002 and February 18, 2003, the record is insufficient to establish what part of these transfers resulted in diversion of AMCOM payments that DRS was entitled to receive. Accordingly, we remit the matter to the Supreme Court, Suffolk County, for a hearing on damages. Mastro, J.P., Covello, McCarthy and Dickerson, JJ., concur.