TRINITY BIOTECH, INC., Plaintiff,

v.

Thomas REIDY, Howard Hatfield, Raymond Freeman, and Jimmie Noffsinger, Defendants.

No. 08 Civ. 10419(SAS)(THK).

United States District Court, S.D. New York.

Oct. 13, 2009.

Jeffrey S. Boxer, Esq., Carter Ledyard & Milburn LLP, New York, NY, for Plaintiff.

Thomas Reidy, Boca Grande, FL, pro se.

## *ORDER*

SHIRA A. SCHEINDLIN, District Judge.

The above-captioned breach of contract action was referred to Magistrate Judge Theodore H. Katz for an inquest as to the amount of damages attributable to the remaining pro se defendant, Thomas Reidy.[1]

1. The other three defendants appeared in the case and have since settled with plaintiff "for significant percentages of the total claims against them." 9/30/09 Letter from Jeffrey S.

In short, Trinity Biotech, Inc. ("Trinity") and the individual defendants entered into a Stock Purchase Agreement wherein Trinity purchased all of the outstanding stock of Primus Corporation ("Primus") from defendants in exchange for a $3,000,000 Promissory Note, secured by collateral, and an "earnout payment" based on the amount of revenue earned by Primus during fiscal 2005.[2] Defendants artificially inflated revenues for that period, thereby causing the purchase price of the Primus stock to increase by $512,192.80.[3] Trinity then brought the instant breach of contract action, seeking to recoup the fraudulent $512,192.80 increase in Primus stock price from defendants.

In his R & R, Magistrate Judge Katz recommends that plaintiff be awarded damages in the amount of $200,677.14,[4] plus prejudgment interest at the rate of nine percent (9%) from March 9, 2006, through the entry of judgment.[5] Magistrate Judge Katz also recommends that Reidy be required to return to Trinity any collateral and stock assignments which were pledged to him under the Pledge Agreement entered into by the parties as security for the Promissory Note.[6] Although Reidy was given an opportunity to respond to plaintiff's damages submission, he failed to do so.[7]

Judge Katz directed the parties to *file* objections to his R & R within ten (10) days of service of the Report, which resulted in a deadline of September 21, 2009.[8] Reidy did not file his objections with the Clerk of the Court but instead sent this Court a timely letter dated September 15, 2009.[9] While pro se parties are generally afforded more leniency than represented parties,[10] Reidy is a sophisticated businessman who should have been able to follow these simple filing instructions. Nonetheless, this Court will treat Reidy's letter as if it were properly filed with the Clerk of the Court.

Reidy has had ample opportunity to oppose both the default judgment application and the amount of damages sought by plaintiff, but he has repeatedly failed to do

---

Boxer, plaintiff's attorney, at 1 (hereinafter "Response").

**2.** *See* 9/3/09 Report and Recommendation of Magistrate Judge Katz ("R & R" or "Report") at 380–81.

**3.** *See id.* at 383.

**4.** *See id.* at 379–80. Because Reidy was entitled to 39.18% of the purchase price of Primus, his unwarranted earnout amounted to $200,677.14 383.

**5.** *See id.* at 379–80. Trinity paid the earnout payment to defendants on March 9, 2006. *See id.* at 11.

**6.** *See id.* at 379–80, 381 ("At the closing, Trinity gave Defendants a Promissory Note for $3,000,000.00, and entered into a Pledge Agreement as security for the Note. Under the Pledge Agreement, Trinity granted to Defendants a first priority security interest in 4900 shares of the Common Stock of Primus. Trinity was required to give Defendants possession of all of the stock certificates it was pledging as collateral. The Pledge Agreement mandated Defendants to return the collateral at the time the Promissory Note was repaid in full by Trinity. Trinity repaid the Promissory Note in full in the third quarter of 2006.") (citations omitted).

**7.** *See id.* at 379.

**8.** *See id.* at 384 ("Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this report to *file* written objections. Such objections shall be filed with the Clerk of the Court . . . .") (citation omitted, emphasis added).

**9.** Hereinafter referred to as "Objections."

**10.** *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

so. In his Objections, Reidy does not contradict or dispute any of the factual findings or legal conclusions contained in the R & R. Rather, Reidy questions Trinity's motivation for pursuing this litigation against him and discusses his unsuccessful attempts to remove certain officers and directors of Trinity from office.[11] In addition, Reidy complains that the amount of damages and interest for which he is held liable under the R & R is "significantly different than the amounts paid by my former partners."[12] Reidy concludes by asking this Court to "temporarily set aside" the default judgment against him.[13]

Plaintiff opposes any such stay, arguing that "Reidy's views of Trinity's management and apparent efforts to replace certain managers are not relevant to this proceeding and are not a basis for further delaying his action."[14] I agree. The ouster of certain Trinity officers and directors has no relevance to Reidy's failure to appear in this action and the amount of damages to be assessed against him on a default judgment. Because Reidy has failed to assert any valid objections to the R & R, this Court hereby adopts Magistrate Judge Katz's thorough and thoughtful R & R.

Accordingly, the Clerk of the Court is directed to prepare a Judgment consistent with the R & R and this Order. The Clerk of the Court is further directed to close plaintiff's motion for default judgment (Document # 13) and this case.

SO ORDERED.

### REPORT AND RECOMMENDATION

THEODORE H. KATZ, United States Magistrate Judge.

**TO: HON. SHIRA A. SCHEINDLIN, UNITED STATES DISTRICT JUDGE. FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

This breach of contract action was referred to this Court for an inquest on damages with respect to one of the Defendants—Thomas Reidy. Plaintiff Trinity Biotech, Inc. ("Trinity") seeks the entry of a default judgment against Mr. Reidy, who failed to respond to the Complaint.[1] Plaintiff submitted an affidavit and other documentation establishing a factual basis for its request for damages and other relief, to which Defendant Reidy was given an opportunity to respond. Defendant Reidy failed to contest Plaintiff's damage submission.[2]

For the reasons that follow, this Court recommends that a default judgment be entered against Defendant Reidy, awarding Plaintiff Trinity damages in the amount of $200,677.14, plus prejudgment interest at the rate of 9%, and requiring Defendant Reidy to return to Trinity the collateral and stock assignments which were pledged to him under a pledge agreement.

---

11. *See* Objections at 1 ("I believe this judgment is being done as a form of harassment and an attempt to discredit me as I am engaged in an attempt to remove the current Chairman and CEO from Trinity . . . .").

12. *Id.*

13. *Id.* at 1, 2 ("I beg the court's indulgence and ask that this judgment be set aside while we are in the process of convening the [Extraordinary General Meeting].").

14. Response at 1.

1. The other Defendants appeared in the case and have reached a settlement with Plaintiff.

2. The only communication received from Mr. Reidy was a letter, dated April 28, 2009/ claiming that he believed he was negotiating a settlement with Plaintiff. Plaintiff's counsel responded stating that there had been no negotiations with Mr. Reidy whatsoever.

## DISCUSSION

### I.  Legal Standards

■ Upon the default of a party, a court must accept all factual allegations of the complaint as true, except those relating to damages. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir.1997); *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981). A default judgment that is entered on the well-pleaded allegations in a complaint establishes a defendant's liability, *see Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir.1995); *S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir.1975), and the sole issue that remains before the court is whether the plaintiff can show, with "reasonable certainty," entitlement to the amount of damages it seeks. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir.1999); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992); *see also Robinson v. Sanctuary Record Groups, Ltd.*, 542 F.Supp.2d 284, 288–89 (S.D.N.Y.2008) (explaining that although default establishes liability, a plaintiff is still "required to prove damages with 'reasonable certainty' ") (quoting *Credit Lyonnais*, 183 F.3d at 152). A court may determine the appropriate damages on the basis of affidavits and other documentary evidence, "as long as [the Court has] ensured that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine*, 109 F.3d at 111 (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir.1989)).

**3.** Trinity specializes in the development, manufacture, and marketing of diagnostic test kits used in the clinical laboratories to detect infectious diseases, sexually transmitted diseases, and other disorders. (*See* Complaint

### II.  Established Facts and Liability

The following facts set forth in the Complaint establish Mr. Reidy's liability for breach of contract.

■ On July 19, 2005, Trinity and Defendants[3] entered into a Stock Purchase Agreement ("the Agreement") (Exhibit ("Ex.") A to the Complaint), for Trinity to purchase all of the issued and outstanding capital stock of Primus. (*See* Complaint ¶ 11.) Pursuant to Article 2 of the Agreement, in consideration for Defendants conveyance of all rights and title to the Primus Shares, Trinity was to pay a purchase price at closing, as set forth in Section 2.2(a) of the Agreement. (*See id.* ¶ 12.) As part of the purchase price, Trinity was required to give Defendants, at closing, a promissory note payable one year after the closing in the amount of $3,000,000.00. (*See id.* ¶ 13.) The Promissory Note was secured by certain collateral in accordance with the terms of a pledge agreement simultaneously entered into between the parties. (*See id.*) In addition to the set purchase price, Trinity agreed to pay Defendants an additional amount of compensation based upon the revenues earned by Primus for the 12–month period ending December 31, 2005, as reflected in the Income Statement for Primus for the fiscal year 2005, based upon a set schedule. (*See id.* ¶ 14.) The Agreement expressly provided that Primus's 2005 Income Statement was to be prepared in accordance with GAAP (generally accepted accounting principles in effect in the United States), and that Primus was to conduct its business in the fiscal year 2005 consistent with past practice. (*See id.* ¶ 15; *see also* Agreement § 2.2(c).)

¶ 4.) Trinity also provides raw materials to the life sciences industry. (*See id.*) Defendants are former shareholders of the Primus Corporation ("Primus"). (*See id.* ¶¶ 5–8.)

Under the terms of the Agreement, Trinity was required to appoint Mr. Reidy as a director of Primus and to employ him as President and Chief Executive Officer, during the time that the revenue for the 2005 fiscal year was being earned and the time that Primus's 2005 revenue was being calculated and paid in accordance with the Agreement. (*See* Complaint ¶¶ 17–18.)

The transaction contemplated in the Agreement closed on July 19, 2005, and, simultaneously, Mr. Reidy entered into an employment agreement with Trinity to serve in the role of President and Chief Executive Officer of Primus. (*See* Complaint ¶¶ 20–21.) In those positions, Mr. Reidy was responsible for approving all sales transactions entered into on behalf of Primus and overseeing and approving the preparation of Primus's financial statements. (*See id.*)

At the closing, Trinity gave Defendants a Promissory Note for $3,000,000.00, and entered into a Pledge Agreement as security for the Note. (*See id.* ¶ 24 & Ex. B to the Complaint ("Pledge Agreement").) Under the Pledge Agreement, Trinity granted to Defendants a first priority security interest in 4900 shares of the Common Stock of Primus. (*See id.* ¶ 25 & Pledge Agreement § 2(a).) Trinity was required to give Defendants possession of all of the stock certificates it was pledging as collateral. (*See id.* ¶ 26.) The Pledge Agreement mandated Defendants to return the collateral at the time the Promissory Note was repaid in full by Trinity. (*See id.* ¶¶ 26–27.) Trinity repaid the Promissory Note in full in the third quarter of 2006. (*See id.* ¶ 28.) On or about July 29, 2008, Trinity sent a letter to Defendants reminding them of their contractual obligation to return the collateral and stock assignments to Trinity. (*See id.* ¶ 29.) On or about August 15, 2008, Trinity sent a second letter to Defendants, again reminding them of their obligations

under the Agreement. (*See id.* ¶ 30.) In response to the second letter, Defendants Hatfield, Freeman, and Noffsinger returned the portions of the collateral and stock assignments which were in their possession and control, but, as of the date of the Complaint, December 2, 2008, Defendant Reidy was still in possession of his portion of the collateral and stock assignments. (*See id.* ¶¶ 31–32.)

Primus's 2005 Income Statement indicated that the revenues for 2005 were $11,336,808.00, and based upon the formula in the Agreement, Trinity paid an additional purchase price of $3,025,398.00 to Defendants. (*See id.* ¶¶ 22–23; *see also* Declaration of Kevin Tansley in Support of Request to Enter Default Judgment, dated Apr. 5, 2009 ("Tansley Decl."), Ex. C.) Trinity subsequently found out that subsequent to the execution of the Agreement, Primus shipped equipment to Progressive Group, Primus's distributor in Taiwan, on a sale/return basis. (*See* Complaint ¶ 33.) Mr. Reidy authorized the transaction. (*See id.*) The sale price of these items was listed as $182,500.00, and that amount was included as revenue in Primus's 2005 Income Statement. (*See id.* ¶ 34.) A sale/return transaction meant that Progressive was not required to pay for the equipment until it sold it, or, alternatively, that Progressive could return the equipment to Primus if it was not sold. (*See id.* ¶ 35.) Trinity subsequently learned that Progressive returned some of the equipment in 2006, and never paid for it. (*See id.* ¶ 36.) Progressive paid for the remainder of the equipment on February 21, 2007, fourteen months after shipment. (*See id.* ¶ 37.) Moreover, that equipment was sold by Progressive to Primus International, LLC, a joint venture company that was owned 50% by Primus and 50% by Progressive. (*See id.* ¶ 38.)

On December 31, 2005, Primus shipped to Progressive a large quantity of material having a market value of $110,181.60, and granted Progressive a 210–day credit term for this transaction. (*See id.* ¶ 39; *see also* Tansley Decl. Ex. F.) Mr. Reidy was responsible for establishing the terms of the transaction. (*See* Complaint ¶ 40.) The credit terms for all other sales from Primus to Progressive were 90 days. (*See id.* ¶ 41.) Primus included the full market value of the material in its 2005 Income Statement, without deduction. (*See id.* ¶ 42.)

GAAP principles preclude a company from recognizing revenue where the buyer has the right to return the product and the buyer does not pay the seller at the time of the sale, and the buyer is not obligated to pay the seller at a specified date. (*See id.* ¶ 45.) The same applies where the buyer does not pay the seller at the time of the sale, but is obligated to pay at a specified date, and the buyer's obligation to pay is excused until it resells the product. (*See id.*) Generally accepted accounting principles at the time of the 2005 Income Statement also required that when recognizing shipments with unusually long credit terms, the revenue earned from such shipments had to be discounted from the date of expected collection to the date of invoice. (*See id.* ¶ 46.)

The Primus 2005 Income Statement was not prepared in accordance with GAAP because it inappropriately included the value of the equipment Primus shipped to Progressive in November and December 2005, for a value of $182,500.00. (*See id.* ¶ 47.) Because Progressive had the right to return the equipment, and was not obligated to pay Primus for the equipment at the time of the sale or by any other date certain, the market value of the equipment

should not have been included in the 2005 Statement. (*See id.*) Similarly, under GAAP, the $110,181.60 value of the material sold to Progressive on December 31, 2005, should have been discounted at an appropriate rate to account for the abnormally long 210–day credit term granted to Progressive. (*See id.* ¶ 48.) Instead, the full value was included in the 2005 Statement. Inclusion of both of these amounts in the Income Statement was in violation of the parties' Agreement.

In addition, it was improper to include the full value of these sales in the 2005 Income Statement because it was inconsistent with Primus's ordinary course of business to grant credit terms of 210 days, and to sell goods on a sale/return basis. (*See id.* ¶¶ 50–51.) Therefore, a total of $292,681.60 should have been excluded from Primus's 2005 Income Statement. Because of the inclusion of these inappropriate transactions in the Statement, the additional purchase price paid to Defendants was improperly increased by $512,192.80. (*See id.* ¶ 54.)

These facts establish Defendants' liability for breach of contract. *See Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank,* 392 F.3d 520, 525 (2d Cir.2004) (to prevail on a breach of contract claim a party must prove (1) the existence of a contract, (2) breach of the contract, and (3) damages suffered as a result of the breach); *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir. 1996) ("To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.").[4]

---

4. The Agreement explicitly provides that it is governed by the laws of the State of New York. (*See* Agreement § 8.3(a).)

## III. *Damages*

█ The well-established rule for measuring damages for breach of contract is "the amount necessary to put the plaintiff in the same economic position [it] would have been in had the defendant fulfilled [its] contract." *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir.1995); *accord Adams v. Lindblad Travel, Inc.*, 730 F.2d 89, 92 (2d Cir.1984); *see also Xand Corp. v. Reliable Sys. Alternatives Corp.*, 63 A.D.3d 724, 725, 880 N.Y.S.2d 333, 333 (2d Dep't 2009); *DRS Optronics, Inc. v. North Fork Bank*, 43 A.D.3d 982, 986, 843 N.Y.S.2d 124 (2d Dep't 2007).

The invoices and account statements for the items for which Defendants improperly claimed earnout credit have been submitted to the Court. (*See* Tansley Decl. Ex. F.) As described, income for these items, in the amount of $292,681.60, was claimed by Defendants, resulting in Primus's total revenues being listed in the 2005 Income Statement as $11,336,808.00. (*See* Tansley Decl. ¶ 7 & Ex. C.) Defendants received an additional earnout based upon $11,157,656.00 of the revenue listed. (*See id.*) According to the schedule set forth in section 2.2(c) of the Agreement, for every $1.00 of revenue listed on the 2005 Statement between $8,500,000.00 and $9,500,000.00, Defendants were to receive $0.625; for every $1.00 of revenue between $9,500,000.00 and $10,500,000.00, Defendants were to receive $1.25; and for every $1.00 of revenue between $10,500,000.00 and $11,500,000.00, Defendants were to receive $1.75. (*See* Agreement § 2.2(c).) Defendants received an additional earnout totaling $2,705,324.00, which was paid to Defendants in two installments. (*See* Tansley Decl. ¶ 9 & Ex. E.) The first installment of $2,402,547.00 was paid to Defendants on March 9, 2006. (*See id.*) The second installment of $302,777.00 was paid to Defendants on May 31, 2006. (*See id.*) Thus, Defendants collectively received un-justified-earnout in the amount of $512,192.80, based on the $292,681.60 that was inappropriately identified as income in the 2005 Statement ($292,681.60 × $1.75 = $512,192.80). (*See id.* ¶ 11.) Mr. Reidy was entitled to 39.18% of the purchase price of Primus (*see id.* Ex. D), and, thus, his portion of the unwarranted earnout was $200,677.14 ($512,192.80 × 39.18%).

The Court therefore recommends that a default judgment be entered against Defendant Reidy in the amount of $200,677.14.

█ Trinity also seeks prejudgment interest. Under New York law, a prevailing party in a breach of contract action is entitled to prejudgment interest from the date that the breach occurred ("the earliest ascertainable date the cause of action existed") through the entry of judgment. *See Graham v. James*, 144 F.3d 229, 239 (2d Cir.1998) ("Under New York law, 'prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract.'") (quoting *Adams*, 730 F.2d at 93); *see also* N.Y.C.P.L.R. § 5001 (McKinney's 2007); *accord Atateks Foreign Trade Ltd. v. Private Label Sourcing, LLC*, No. 07 Civ. 6665(HB), 2009 WL 1803458, at *23 (S.D.N.Y. June 23, 2009). New York requires that prejudgment interest shall be at the rate of 9%, unless otherwise provided in the contract. *See* N.Y. C.P.L.R. § 5004; *Atateks*, 2009 WL 1803458, at *23; *English Boiler & Tube, Inc. v. Optimira Energy, Inc.*, No. 08 Civ. 3605(JGK), 2009 WL 884662, at *2 (S.D.N.Y. Apr. 1, 2009).

Accordingly, Plaintiff is entitled to prejudgment interest at the rate of 9% from March 9, 2006, the date of the earnout payment to Defendants, through the entry of judgment.

Plaintiff is also entitled to return of the pledged securities under the Pledge

Agreement § 2(b), as the Promissory Notes have been fully repaid.

## CONCLUSION

For the reasons set forth, this Court respectfully recommends that a default judgement be entered against Defendant Thomas Reidy, in the amount of $200,677.14, with prejudgment interest at the rate of 9% from March 9, 2006 through the date of the entry of judgment. The default judgment should also require that Thomas Reidy return the collateral and stock assignments that were pledged to him under the July 19, 2005 Pledge Agreement.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this report to file written objections. *See also* Fed.R.Civ.P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Shira A. Scheindlin, United States District Judge, 500 Pearl Street, New York, N.Y. 10007, and to the chambers of the undersigned, Room 1660, 500 Pearl Street. Any requests for an extension of time for filing objections must be directed to Judge Scheindlin. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn,* 474 U.S. 140, 147–48, 106 S.Ct. 466, 471, 88 L.Ed.2d 435 (1985); *Mario v. P & C Food Mkts., Inc.,* 313 F.3d 758, 766 (2d Cir.2002); *Spence v. Superintendent,* 219 F.3d 162, 174 (2d Cir.2000); *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam).